| | | |
|---|---|---|
| ARUN K. BHATTACHARYA, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| PLAINTIFF, | ) ) | |
| v. | ) ) | No. 14 C 9693 |
| THE CHICAGO HOUSING AUTHORITY, a municipal corporation, BEN CARSON,[1] Secretary of United States Department of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) ) | Judge Thomas M. Durkin |
| DEFENDANTS. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arun Bhattacharya, a citizen of Cook County, Illinois residing in subsidized housing alleges that the Chicago Housing Authority ("CHA") and the Secretary of the United States Department of Housing and Development ("HUD") and HUD (collectively, "HUD"), charged him and other tenants excessive rents in violation of the rental payment provision of the United States Housing Act, 42 U.S.C. § 1437a, known as the Brooke Amendment (Count I). Plaintiff asserts in the alternative against HUD an identical claim pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.* (Count II), and also asserts

---

[1]     Plaintiff originally filed this lawsuit against Secretary Julian Castro in his official-capacity. The Court takes judicial notice that Secretary Castro has been succeeded by Secretary Ben Carson, and so changes the case caption to reflect the correct defendant.

substantive due process claims under the Fifth and Fourteenth Amendments against both CHA (Count IV) and HUD (Count III) pursuant to 42 U.S.C. § 1983. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. The defendants move separately to dismiss. HUD moves under Federal Rule of Civil Procedure 12(b)(1) on the basis that plaintiff lacks standing. Both defendants move under Rule 12(b)(6), arguing that Plaintiff has not alleged any plausible claim for relief. Finally, the CHA moves to dismiss the class claims. For the reasons set forth below, the motions to dismiss counts I, II and IV are denied, the motion to dismiss Count III is granted in part, and the motion to dismiss the class claims is granted in part.

## Background

On or about September 3, 2011, Plaintiff was admitted to the CHA's housing assistance program. R. 26 (Class Compl.) ¶ 25. As part of the program, Plaintiff signed a Lease Agreement with the CHA, R. 26-1, pursuant to which he agreed to pay income-based rent every month, with the amount of his income, and thus his rent, subject to periodic reevaluation. R. 26 ¶ 26; R. 26-1 at 28. The CHA's "Admissions and Continued Occupancy Policy," incorporated by reference into the Lease Agreement, stated that to determine plaintiff's income and rent, the CHA would apply "the definition of annual income provided by HUD." R. 26-2 (Admissions and Continued Occupancy Policy) at 62; R. 26-1 at 3.

The Brooke Amendment caps rents for low-income families at the highest of the following amounts:

(A) 30 per centum of the family's monthly adjusted income;

(B) 10 per centum of the family's monthly income; or

(C) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated.

42 U.S.C.A. § 1437a. To support the administration of this statute, HUD promulgated regulations regarding what types of income and assets public housing officials should include (and exclude) to determine participating families' annual income. 24 C.F.R. § 5.609. Among the amounts to be included in the calculation are "interest, dividends, and other net income of any kind from real or personal property." § 5.609(b)(3). For families with assets exceeding $5,000, this amount is to be calculated as "the greater of the actual income derived from all net family assets or a percentage of the value of such assets based on the current passbook savings rate, as determined by HUD." *Id.* (the "imputed interest regulation").

In July 2013, Plaintiff had a total of $11,952 deposited in his bank checking and savings accounts. R. 26 ¶ 28. At that time, HUD and the CHA applied a passbook savings rate of .51%, though the weekly national interest rate for accounts like Plaintiff's was .06% as reported by the FDIC, and Plaintiff's actual rate of return on his bank accounts was lower still at .01%. *Id.* ¶ 29. Applying the passbook savings rate of .51% to the amount in Plaintiff's bank accounts, the CHA added $61.00 to its calculation of Plaintiff's total annual income, though the amount of interest that actually accrued on the accounts was only 14 cents. *Id.* ¶¶ 30-31.

Based on the imputed income, the CHA increased Plaintiff's monthly rent from $246 to $248.

Plaintiff alleges that "[t]his methodology adopted by HUD and used by the CHA resulted in charging plaintiff [and others similarly situated] a monthly rent . . . in excess of the rent ceiling, in violation of [the Brooke Amendment]." *Id.* ¶ 32. Though argued with greater nuance, the essence of the defendants' arguments for dismissal is that even if rents charged to Plaintiff and those he seeks to represent exceeded the rent ceiling imposed by the Brooke Amendment, neither agency can be held responsible for the violation. Their arguments are examined further below.

## Discussion

### I. Standing

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the Court's subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion." *Bolden v. Wells Fargo Bank, N.A.*, 2014 WL 6461690, at *2 (N.D. Ill. Nov. 18, 2014) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443-44 (7th Cir. 2009)). "If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiffs favor." *Bolden,* 2014 WL 6461690, at *2 (citing *United Phosphorus, Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir. 2003)). A factual challenge to the court's subject matter jurisdiction, on the other hand, is based on

the assertion that "the complaint is formally sufficient but . . . there is *in fact* no subject matter jurisdiction." *United Phosphorus,* 322 F.3d at 946 (emphasis in original). When considering a factual challenge to the court's jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue,* 536 F.3d 651, 656-57 (7th Cir. 2008). "[T]he party asserting a right to a federal forum has the burden of proof." *Craig v. Ontario Corp.,* 543 F.3d 872, 876 (7th Cir. 2008).

HUD makes a factual challenge to the Court's jurisdiction, arguing that despite what has been pled, Plaintiff does not have standing as to claims asserted against it. R. 42 at 6-8. To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–181 (2000)). HUD argues that Plaintiff cannot carry his burden as to the second element[2]—causation—because "the federal defendants had no involvement whatsoever in the decision [to set the passbook savings rate for Plaintiff at .5]." R. 54 at 2; R. 42 at 6.

---

[2]     Notably, HUD does not challenge that Plaintiff suffered an injury or that the injury is redressable. R. 54 at 3. The Court agrees that the first and third prongs of the standing inquiry are satisfied.

To support this position, HUD directs the Court to Notice PIH 2012-29, issued by HUD on June 21, 2012 to the "[s]pecial attention" of public housing agencies ("PHAs") like the CHA. R. 42-1 at 5-6. HUD's purpose in issuing PIH 2012-29 was to "clarif[y] program policy related to the passbook savings rate used to determine annual income from net family assets" in order to "minimize[] the administrative burden on . . . PHAs in conducting a survey of local banks, by relying on a rate that is publicly available and based upon recent market data." *Id.* at 5. PIH 2012-29 permits PHAs to "establish [their] own passbook rate," provided the rate is "within 75 basis points (plus or minus .75 percent) of the Savings National Rate in effect at the time." *Id.* at 6. According to HUD, the authority delegated to PHAs by PIH 2012-29 "irrefutabl[y]" indicates that "the CHA set the passbook savings rate for its tenants, including [Plaintiff], when imputing income" and that "HUD had *no* involvement in the CHA's decision." R. 42 at 6-7 (emphasis in original). The Court is not persuaded.

Even if PIH 2012-29 conferred some measure of independence upon the CHA to set the passbook savings rate for its tenants, it did not simultaneously absolve HUD of the obligation to ensure that the CHA complied with the Brooke Amendment. In fact, to the extent PIH 2012-29 authorized the CHA to reduce its administrative burden by forgoing a survey of local banks to determine an appropriate passbook savings rate for its tenants, and to the extent it permitted the CHA to establish a rate many multiples above the Savings National Rate, HUD condoned and authorized the alleged miscalculations at issue. Far from proving that

HUD played no role in Plaintiff's injury, PIH 2012-19 supports Plaintiff's assertion that the injury is fairly traceable to HUD. Plaintiff therefore has constitutional standing and HUD is properly subject to the jurisdiction of this Court.[3]

III.  <u>Sufficiency of the Complaint</u>

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels

---

[3]  HUD also argues that even if it remains in this case, the Court should dismiss the Secretary of HUD, named in his official capacity, as a redundant party. In support, it cites *Pubentz v. Holder*, 819 F. Supp. 2d 721, 726 (N.D. Ill. 2011), which held that where the Director of the FBI had been sued under Title VII, it was "redundant" for the plaintiff to also name her FBI division supervisor in her official capacity. *Pubentz* is inapposite because the relationship between an agency director, the agency, and a subordinate supervisor is not analogous to the relationship between the agency and its director. Furthermore, the director of the FBI and not the FBI itself was named as a defendant in that case. In a lawsuit proceeding against a government agency, the senior-most official of the agency is routinely named in his official capacity because his office has the power to ensure the agency's compliance with an order of the court. Indeed, this was the case in *Pubentz*. If anything, HUD is the redundant party here, because an official capacity claim against the Secretary of HUD is a claim against the agency itself. *See McCurdy v. Sheriff of Madison Cty.*, 128 F.3d 1144, 1145 (7th Cir. 1997) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). Defendants have not argued that HUD should be dismissed in favor of the Secretary. For this reason, and because the plaintiff is the master of his complaint, *Duckworth v. Franzen,* 780 F.2d 645, 650 (7th Cir. 1985), the redundancy is allowed. The Secretary shall remain a defendant in this matter.

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

A.    <u>Brooke Amendment</u>

Plaintiff seeks to hold both HUD and the CHA liable for improperly calculating Plaintiff's annual income in a manner that caused him (and others) to be charged rent in excess of the ceiling codified in the Brooke Amendment. R. 26 (Count I). The defendants argue that the claim fails because there is no private cause of action under the Brooke Amendment and because Plaintiff has failed to allege facts sufficient to tie either of them to the alleged violation. Both arguments are addressed, and rejected, in turn.

1.    *Private Cause of Action*

The CHA and HUD argue that Plaintiff's claim under the Brooke Amendment fails as a matter of law because the statute does not create a private cause of action. R. 39 at 5; R. 42 at 8. When a statute does not expressly authorize private enforcement, a court may nevertheless permit a cause of action if it

determines the statute implies one. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).

To make this determination, courts ask first "whether or not Congress intended to confer individual rights upon a class of beneficiaries" in enacting the statute. *Id.* at 286 ("This initial inquiry—determining whether a statute confers any right at all—is no different [in the context of a § 1983 claim against state actors] from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute confers rights on a particular class of persons.") (internal quotation marks omitted) (citing *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423 (1987) (statute must be "intended to rise to the level of an enforceable right"), *Alexander v. Sandoval,* 532 U.S. 275, 289 (2001) (statute must evince "congressional intent to create new rights"), and *California v. Sierra Club,* 451 U.S. 287, 294 (1981) ("The question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries" (citing *Cannon v. University of Chicago,* 441 U.S. 677, 690-93, n. 13))). To answer this question, courts look to the language of the statute—whether it is "specific and definite" or "vague and amorphous," and whether "the right is couched in mandatory or precatory terms." *See Gonzaga*, 536 U.S. at 281 (citation omitted); *Blessing v. Freestone*, 520 U.S. 329, 341 (1997) (citation omitted).

If the language of a statute is expressed in rights-creating terms, courts must also determine whether Congress intended to grant or foreclose a private remedy.

*See Blessing*, 520 U.S. at 341 (citing *Smith v. Robinson*, 468 U.S. 992, 1005, n. 9 (1984)). To make this determination, courts are to consider a statute's legislative history, its internal enforcement scheme, and the availability of other mechanisms of enforcement under state law. *Cort v. Ash*, 422 U.S. 66, 80 (1975); *see also Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 521-23 (1990).

The Supreme Court conducted just such an analysis of the Brooke Amendment in *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418 (1987). In doing so, the Court concluded that the "intent [of the Brooke Amendment] to benefit tenants is undeniable," and that "the mandatory limitation focusing on the individual family and its income" is sufficiently definite to qualify as an enforceable federal right. *Id.* at 430-32. The *Wright* court also conducted an extensive review of the Brooke Amendment's legislative history and the remedial mechanisms available to tenants within the Housing Act and under state law. *Id.* at 424-45. It held:

> Not only are the Brooke Amendment and its legislative history devoid of any express indication that exclusive enforcement authority was vested in HUD, but there have also been both congressional and agency actions indicating that enforcement authority is not centralized and that private actions were anticipated. Neither, in our view, are the remedial mechanisms provided sufficiently comprehensive and effective to raise a clear inference that Congress intended to foreclose a § 1983 cause of action for the enforcement of tenant's rights secured by federal law.

*Id.* at 425. The Court furthermore held that the existence of state administrative remedies and state law causes of action are "hardly a reason to bar an action under § 1983, which was adopted to provide a federal remedy for the enforcement of federal rights." *Id.* at 429. In the three decades since *Wright*, its holding as to the

Brooke Amendment has not been called into question. *See Gonzaga*, 536 U.S. at 280-81 (affirming the correctness of the *Wright* decision because, among the other reasons set forth above, the Brooke Amendment "explicitly conferred specific monetary entitlements upon the plaintiffs"); *see also DeCambre v. Brookline Housing Auth.*, 826 F.3d 1, 12-13 (1st Cir. 2016) (applying *Wright* and the implied right analysis set forth in *Gonzaga* to find that the rent ceiling provision applicable to Section 8 voucher housing, which is virtually identical to the Brooke Amendment, confers a right on tenants that is presumptively enforceable under § 1983); *Haywood v. Chicago Housing Auth.*, 2016 WL 5405052, at *9 (N.D. Ill. Sept. 28, 2016) ("[T]he regime governing rent for purposes of the Brooke Amendment has not materially changed since *Wright* was decided—which means that [it] confers on Plaintiffs a private right of action under § 1983 to enforce the statutory ceiling.").

This is sufficient to state a claim under the Brooke Amendment against the CHA through § 1983, which provides an enforcement mechanism for violations of federal law against state officials.[4] Federal officials, however, are not "persons" for

---

[4] Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"Section 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.,* rights independently 'secured by the Constitution and laws' of the United States. One cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Gonzaga*, 536 U.S. at 285 (internal quotation marks and citations omitted).

purposes of § 1983, so further analysis is required to determine whether a private right of action is implied against HUD in the statute itself. *See Gonzaga*, 536 U.S. at 284-85 ("Whether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute" because "[p]laintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy [since] § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes."). To determine whether a private cause of action is implied in the statute itself (and thus enforceable against defendants other than state officials acting under color of law), a plaintiff must show that the statute manifests an "intent to create not just a private right but also a private remedy," with the "[s]tatutory intent on this latter point [being] determinative." *Sandoval*, 532 U.S. at 287. The defendants argue that Plaintiff cannot carry this "heavy burden." R. 54 at 7. They are incorrect.

Three years before *Wright*, the Sixth Circuit considered whether the Brooke Amendment implied not only a private right, but also a private remedy in *Howard v. Pierce*, 738 F.2d 722 (1984). The plaintiff in *Howard* challenged a HUD regulation instructing PHAs to reduce tenants' rent only once in response to a lowering of public assistance benefits. *Id.* at 724. The plaintiff's benefits were reduced and the PHA adjusted her rent accordingly, but when her benefits were reduced a second time, the PHA relied on the newly promulgated regulation to refuse any further adjustment. *Id.* The plaintiff sued to enjoin the PHA from

charging excessive rent, alleging that application of the regulation resulted in her being charged an amount in excess of the Brooke Amendment's rent ceiling. *Id.* Applying the relevant elements of the four-part test set forth in *Cort*, 422 U.S. at 80, the court explained:

> Essentially, Howard asserts that HUD has failed to ensure the low-rent character of public housing because it promulgated a regulation which undermines completely the effectiveness of the Brooke Amendment's primary feature. Because the relief sought concerns the preservation of the Brooke Amendment's principal provision, and because the Brooke Amendment is critical to the accomplishment of the Act's primary goal, we believe that such relief, if warranted, would be consistent with the scheme of the Act.
> . . .
>
> We do not believe that Congress established the goal of providing decent housing only to allow the goal to be frustrated by statutory violations.

*Id.* at 728–29. HUD urges the Court to disregard the decision in *Howard* as wrongly decided, outdated, and inapposite because the plaintiff in that case did not seek money damages. In support of its position, HUD cites a pre-*Howard* case from the Middle District of Alabama, a decision from this district finding no private right of action under a HUD regulation (which is different than a private right of action under the Brooke Amendment itself), and decision from the Southern District of New York finding that "nowhere does the legislative history [of the Brooke Amendment] indicate that tenants were to have private rights of action against *private landlords*," *McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 247 (S.D.N.Y. 1989) (emphasis added). None of these cases contradict the holding in *Howard*.

As for the remedy at issue, the plaintiff here, like the plaintiff in *Howard*, seeks equitable and injunctive relief. Nothing about the decision in *Howard* requires dismissal on the pleadings because Plaintiff also seeks reimbursement of rent overages. The Court holds that there is a private right of action implied in the Brooke Amendment that is enforceable against both the CHA and HUD.

### 2.    *Causation*

As to the substance of the claim, the CHA and HUD each argue that the claim fails because Plaintiff has not alleged facts asserting that either defendant caused the harm he alleges to have suffered. In a series of circular arguments, each defendant points a finger at the other, ignoring the fundamental question at issue in this case—was Plaintiff charged rent in violation of the Brooke Amendment? The CHA argues that Plaintiff cannot state a claim against it because in computing Plaintiff's rent, the CHA followed HUD regulations and published guidance. R. 39 at 7. HUD argues that it cannot be held responsible for Plaintiff's losses because the CHA, not HUD, selected the passbook savings rate to apply to Plaintiff's assets, calculated his income, and set and collected his rent. Which of course brings us back to the CHA's argument that in doing so, it was simply following HUD's instructions.

This finger pointing is not the Plaintiff's problem. Plaintiff has plausibly alleged that he was charged rent in excess of the statutory limit. If Plaintiff can prove that HUD's regulation and guidance violate the Brooke Amendment, then HUD may be held responsible. Of course, HUD may defend itself with the argument

that the regulation and guidance could and should have been applied in a manner consistent with the Brooke Amendment. Whether that would preclude a finding of liability against HUD is a question for another day and one that cannot be resolved on a motion to dismiss.

If Plaintiff can prove that the CHA applied HUD's guidance in a manner that violated the Brooke Amendment when an alternative, compliant application was possible, then the CHA may be liable. The CHA may be able to show that the broad language of the imputed interest regulation and the permissive nature of the administrative guidance justified its application of a passbook savings rate of .51 percent when Plaintiff was earning .01 percent on his cash accounts. Again, that cannot be resolved by a motion to dismiss. For now, it suffices that Plaintiff has plausibly alleged that both of the defendants contributed to the violation. Count I will proceed.

B.     Count II – Brooke Amendment and APA

Count II is pled against HUD "in the alternative to Count I." R. 26 at 11. In Count II, Plaintiff seeks judicial review of the imputed income regulation (and any administrative guidance published pursuant thereto) arguing that it is "arbitrary, capricious and contrary to [the Brooke Amendment]." *Id.* HUD moves to dismiss Count II arguing that judicial review is inappropriate under the circumstances of this case. R. 42 at 11.

The APA's provisions for judicial review of "agency actions," are contained in 5 U.S.C. §§ 701-706. Any person "adversely affected or aggrieved" by agency action,

*see* § 702, is entitled to "judicial review thereof," *see* § 704, "in a court of competent jurisdiction," *see* § 703. The standards to be applied on review are governed by the provisions of § 706. But before any review may take place, a party must first clear the hurdle of § 701(a), which provides that the section of the APA on judicial review "applies, according to the provisions thereof, except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." HUD urges that its promulgation of the imputed interest regulation was an "agency action committed to agency discretion by law" under § 701(a)(2). In *Heckler v. Chaney*, 470 U.S. 821 (1985), the Supreme Court set forth a simple methodology for determining whether the narrow § 701(a)(2) exception to judicial review of agency action applies:

> [T]urn to the [applicable statute] to determine whether in this case Congress has provided [the courts] with "law to apply." If it has indicated an intent to circumscribe agency [ ] discretion, and has provided meaningful standards for defining the limits of that discretion, there is "law to apply" under § 701(a)(2), and courts may require that the agency follow that law; if it has not, then [the agency action] is "committed to agency discretion by law" within the meaning of that section.

*Id.* at 834-35.

HUD argues that "[g]iven the broad language of the Housing Act, judicial review under the APA is not appropriate in this case." R. 42 at 12. It directs the Court to the following language from the definition of "income" set forth in the Brooke Amendment: "The term 'income' means income from all sources of each member of the household, *as determined in accordance with criteria prescribed by the Secretary.*" *Id.* (citing 42 U.S.C. § 1437a(b)(4)) (emphasis added by HUD). Based on this language, HUD argues that it has "sole authority to promulgate regulations

16

and notices addressing the calculation of income from assets using the savings national rate and allowing PHAs a 'safe harbor range' in which to set the passbook savings rate applicable to their tenants." *Id.* This might be a compelling argument if not for the fact that HUD did not consider the entire definition of "income" in the Brooke Amendment. The definition, in full, reads:

> The term "income" means income from all sources of each member of the household, as determined in accordance with criteria prescribed by the Secretary, in consultation with the Secretary of Agriculture, *except that any amounts not actually received by the family* and any amounts which would be eligible for exclusion under section 1382b(a)(7) of this title or any deferred Department of Veterans Affairs disability benefits that are received in a lump sum amount or in prospective monthly amounts *may not be considered as income under this paragraph.*

42 U.S.C.A. § 1437a(b)(4)(emphasis added).

The language omitted by HUD—circumscribing its authority to define income to include amounts "not actually received by the family"—manifests a clear intent by Congress to limit agency discretion, and provides the Court with a meaningful standard by which to evaluate HUD's exercise of its congressionally delegated authority. Accordingly, Congress has supplied the Court with "law to apply" under § 701(a)(2), and the Court, pursuant to the APA, may require that HUD follow that law.

HUD further argues that its promulgation of the imputed interest regulation is not reviewable because Plaintiff has an adequate remedy against the CHA. *Id.* (citing 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.")). Plaintiff responds that any relief it may obtain against the CHA will not

be adequate because "the Amended Complaint complains not only of the action taken by the CHA, but the procedures initiated and approved by HUD that allow local housing authorities to systematically charge rent in excess of that allowed by [the Brooke Amendment]." R. 52 at 8. The Court agrees with Plaintiff, as a remedy against only the CHA does not provide redress for the actions of HUD.

Finally, HUD argues that if the APA claim is allowed, Plaintiff is precluded from obtaining an award of monetary relief under § 702. R. 42 at 14 (citing 5 U.S.C. § 702 (permitting judicial review of agency action in a suit "seeking relief other than money damages")). Plaintiff counters that the type of relief he seeks is "specific relief," a form of injunctive relief different than "monetary damages." R. 52 at 8. In support, he cites *Zellous v. Broadhead Associates*, 906 F.2d 94 (3rd Cir. 1990), which considered this exact issue. Citing the Supreme Court's decision in *Bowen v. Massachusetts*, 487 U.S. 879 (1988), the *Zellous* Court held tenants' claims for reimbursement of amounts paid in excess of the rent ceiling "seek only that to which they were entitled under the Brooke Amendment and thus the relief requested is 'other than money damages.'" 906 F.2d at 99. The court explained, "reimbursement merely requires HUD to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it implemented timely utility allowance adjustments." *Id.* (internal punctuation omitted) (citing *Bowen*, 471 U.S. at 370-71). Similarly, in this case reimbursement merely requires HUD to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it not imputed unearned interest to Plaintiff's income.

HUD does not dispute the principles of law articulated by the Third Circuit in *Zellous*. Rather, it argues that the Court should not apply those principles to HUD in this case because HUD "had no role in [the CHA's] decision" to use a passbook savings rate of .51 percent to calculated Plaintiff's interest income. R. 54 at 11. According to HUD, "the *only* party that can reimburse Bhattacharya for any excess rent that he may have paid is the CHA." *Id.* The Court has already rejected this argument because of HUD's alleged role in setting the procedures the CHA followed in calculating Plaintiff's rent. Moreover, as HUD explains in its brief, "HUD provides funds to public housing authorities ("PHAs") so that the PHAs can administer the public housing program at the local level," and "retains the authority to set guidelines for how the public housing projects are to be operated and managed." R. 42 at 3. The allegations in *Zellous* concerned "HUD and its officials . . . , together with the housing project's owners and managers" "failing to make timely adjustments in their utilities allowance . . . caus[ing] the tenants to pay a higher share of their income as rent than is permitted under the Brooke Amendment." 906 F.2d at 95. The *Zellous* Court did not consider that because the violation was implemented locally, HUD should not be responsible for its role in failing to adjust utility rates. This Court will not do so either. Specific relief in the form of reimbursed overpayments are allowed under the APA.

C.     Substantive Due Process

In Counts III and IV, Plaintiff alleges violations of his substantive due process rights under the Fifth and Fourteenth Amendments to the Constitution.[5] The due process clauses provide that "[n]o person shall be deprived of life, liberty, or property, without due process of law." *See* U.S.C. Const. Amend. V, XIV. "The touchstone of due process is protection of the individual against arbitrary action of government," including "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (internal citations omitted). The Seventh Circuit has "emphasized how limited the scope of the substantive due process doctrine is." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) (citations omitted). Setting forth the standard for alleging a substantive due process claim, the court explained:

> Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational. And when a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show "either the inadequacy of state law remedies or an independent constitutional violation" before the court will even engage in this deferential rational-basis review.

*Id.* (citations omitted).

Plaintiff alleges that the defendants' "use of an artificially inflated [interest] rate does not meet any legitimate governmental purpose," is "arbitrary, capricious, and unreasonable," and "deprived members of the class of benefits conferred by

_____

[5]     The Fifth Amendment due process clause sets forth citizens' rights against the federal government. The Fourteenth Amendment due process clause is identically worded, but applies to the states; it may be enforced against persons acting under color of state law through 42 U.S.C. § 1983.

federal law."[6] R. 26 ¶¶ 57-61, 65-69. He does not allege an independent constitutional violation, but does argue that he is without an adequate state court remedy. While the CHA argues that Plaintiff could sue on his lease in state court for breach of contract, R. 39 at 7-10, Plaintiff persuasively responds that his grievance is not that the CHA failed to abide by the lease agreement, but rather that both of the defendants caused an unreasonable passbook savings rate to be applied pursuant to the imputed interest regulation. R. 52 at 8. This leaves the question of whether doing so was "arbitrary or irrational." Plaintiff has alleged that it was, and neither of the defendants have proffered any rational basis for the rate applied. Plaintiff, therefore, has stated a substantive due process claim.

HUD, however, argues that as an agency of the United States, it is immune to suit on constitutional claims. Indeed, "[t]o maintain a viable claim against the United States in federal court, a party must identify a federal law that waives the

---

[6]     Though the CHA does not mention it outright, there is a question as to whether Plaintiff has a "property interest" in public housing benefits. *See Eidson v. Pierce*, 745 F.2d 453, 457 (7th Cir. 1984).

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Id.* (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972)). The Supreme Court has held that an individual receiving public benefits has a statutorily created property interest in the continued receipt of those benefits. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 60 (1999) (finding a property interest in federal welfare and social security benefits when "an individual's entitlement to benefits ha[s] been established"). Accordingly, as a low-income tenant determined by the CHA and HUD to qualify for income-based housing benefits, Plaintiff has a legitimate claim of entitlement to pay no more in rent than what may be charged under the Brooke Amendment.

sovereign immunity of the United States to the cause of action." *Macklin v. United States*, 300 F.3d 814, 819 (7th Cir. 2002). Plaintiff responds that 42 U.S.C. § 1404a, the "sue and be sued" provision of the Housing Act, permits claims against the Secretary of HUD "with respect to its functions under the United States Housing Act." While it is certainly true that § 1404a waives HUD's immunity to claims such as those set forth in Count I, which challenges HUD's promulgation of a regulation pursuant to its duties under the Housing Act, it is not necessarily the case that the waiver also applies to claims brought under the United States Constitution.

Two of the cases Plaintiff cites in support of waiver do not speak to whether § 1404a is so broad as to reach constitutional claims. *See Ippolito-Lutz, Inc. v. Harris*, 473 F. Supp. 255, 258 (S.D.N.Y. 1979) (breach of contract and unjust enrichment); *Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.*, No. 2009 WL 449100, at *9 (N.D. Ill. Feb. 23, 2009) (official capacity claim). The third case it cites, *Wilson v. Kemp*, 1992 WL 12667348, (S.D. Ind. Nov. 30, 1982), holds that the waiver in § 1404a is sufficiently broad to reach due process claims seeking equitable relief only. *Id.* at *4 ("Plaintiffs do not seek money damages but instead seek a declaration that HUD is denying them procedural due process in certain instances where plaintiffs' rental assistance is halted. 'It would be surprising and profoundly troubling if federal courts had no jurisdiction to consider whether a federal agency violated the constitution.'") (quoting *Marozsan v. U.S.*, 852 F.2d 1469, 1477-78 (7th Cir. 1988)). The only relevant case cited by HUD, *Furtick v. Medford Housing Authority*, 963 F. Supp. 64 (D. Mass. 1997), held that "[a]s Section 1404a does not

'unequivocally express' an intent to extend this waiver to claims alleging violations of other housing acts or more generalized civil rights statutes[,] . . . the plaintiffs' [Fifth Amendment] claims for monetary damages are barred by sovereign immunity." *Furtick v. Medford Hous. Auth.*, 963 F. Supp. 64, 72 (D. Mass. 1997). Finding no controlling precedent on this point, but finding *Wilson* persuasive, the Court holds that Count III may proceed against HUD in equity only.

IV.    Class Claims

Finally, the CHA argues, and Plaintiff does not dispute, that the two-year statute of limitations applicable to Plaintiff's claims necessarily limits the scope of the class Plaintiff seeks to represent. The Court agrees that Plaintiff may only seek relief for violations dating back two years from the date he filed suit.

## Conclusion

For the reasons set forth herein, the CHA's motion to dismiss [39] is denied as to Counts I and IV, and granted in part as to the limitations on the proposed class. HUD's motion to dismiss [41] is denied as to Counts I and II, and granted in part as to Count III insofar as Plaintiff may seek equitable relief only. The parties are to appear for a status on April 21, 2017 to set a discovery schedule.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated:  March 31, 2017

23